```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION

AMBULATORY INFUSION THERAPY      §
SPECIALISTS, INC.,               §
                                 §
         Plaintiff,              §
                                 §
v.                               §   CIVIL ACTION NO. H-06-2111
                                 §
AETNA HEALTH, INC. f/k/a         §
AETNA U.S. HEALTHCARE, INC.,     §
AETNA HEALTH MANAGEMENT, LLC     §
f/k/a AETNA HEALTH MANAGEMENT,   §
INC., and PACIFICARE,            §
                                 §
         Defendants.             §
```

MEMORANDUM AND ORDER

Pending are Defendant PacifiCare Life Assurance Company's Motion for Summary Judgment (Document No. 23) and Defendant Aetna Health Management, LLC's Motion for Summary Judgment (Document No. 25). After having carefully considered the motions, responses, reply, and the applicable law, the Court concludes that the motions should be granted.

I.  Background

The background of this case and the identities of the parties may be found in the Court's Memorandum and Order dated January 18, 2007. Plaintiff Ambulatory Infusion Therapy Specialists, Inc. ("AITS") claims that Defendants PacifiCare Life Assurance Company ("PacifiCare") and Aetna Health Management, LLC, f/k/a Aetna Health Management, Inc. ("AHM")(collectively, "Defendants"), pre-verified

that they would pay for out-of-network home intravenous "IV" infusion products and related services provided by Plaintiff to Defendants' insured, but then did not make all payments.

From October 1, 2000 to September 30, 2001, L.W. was insured under a group health insurance policy administered by PacifiCare through L.W.'s husband's employer, the City of Friendswood (the "PacifiCare Policy"). Document No. 23 ex. C ¶ 3. L.W.'s coverage under the PacifiCare Plan ended on September 30, 2001, and on October 1, 2001, L.W. became covered under a new plan for employee healthcare coverage obtained by the City from certain Aetna affiliates (the "Aetna Plan"), under which the responsibility for administering out-of-network medical claims was delegated to AHM. *See* id. ¶ 6; Document No. 25 ex. A ¶¶ 9-10. The uncontroverted summary judgment evidence is that PacifiCare and the Aetna affiliates are unrelated and independent entities, and the PacifiCare Plan and the Aetna Plan are entirely separate, have different terms, and cover separate periods of time.

AITS provided home IV infusion products and related services to L.W. from March, 2001 to June, 2002. L.W. assigned her Plan benefits for the supplies and services to AITS. It is undisputed that AITS is not a participant in the provider networks of PacifiCare or AHM. At issue in this litigation are nine claims that Plaintiff alleges were not fully paid, for services provided from October, 2001 through June, 2002, when AHM was L.W.'s insurance carrier.

In March, 2001, AITS's President Connie Hudec ("Hudec") telephoned PacifiCare to pre-verify L.W.'s coverage. Document No. 24 ex. A at 95-96, 114. AITS then submitted assigned medical claims to PacifiCare for reimbursement, and PacifiCare paid to AITS a negotiated rate of 80% of billed charges for those services through September 30, 2001, when L.W.'s coverage under the PacifiCare Plan ended. There are no disputed claims for services provided before October, 2001, when PacifiCare was the insurer. See id. ex. A at 41-42, 92-93 (Hudec's testimony that the claims at issue in this litigation are for services provided after October 1, 2001).

On October 22, 2001, after AITS was informed by PacifiCare that L.W. was no longer insured under the PacifiCare Plan, Hudec called AHM to verify that L.W. was covered under the Aetna Plan and eligible for out-of-network benefits. Document No. 25 ex. C at 56-57. AHM verified that L.W. was covered for out-of-network benefits under the Aetna Plan as of October 1, 2001. Hudec conceded in her testimony that no rates of reimbursement or payment terms for any services were discussed with AHM during this call, and there is no evidence of any subsequent discussion with AHM regarding L.W.'s coverage under the Aetna Plan. See id. at 64, 90-91.[1] Thereafter, AITS submitted assigned medical claims totaling $278,436.96 to AHM

---

[1] Hudec's notes of the telephone call reflect only that Hudec discussed generally whether the Aetna Plan had out-of-network coverage. See Document No. 25 ex. C at 55-61; ex. C-4.

3

for supplies and related services provided to L.W. from October, 2001 into June, 2002, and AHM paid $100,961.38 (approximately 36%) of AITS's claims.  Document No. 26 ex. A at 2.  AHM argues that this reimbursement rate is consistent with the terms of the Aetna Plan, which provides that Aetna will pay 30% of the usual, customary, and reasonable ("UCR") charges for out-of-network services, subject to an annual deductible. *See* Document No. 25 ex. A-2 at A00141-144 (Schedule of Benefits); id. at A00090, A00140 (defining UCR charges).

AITS alleges against Defendants breach of contract, promissory estoppel, and negligent misrepresentation for their refusal to pay the balance of AITS's claims.  PacifiCare and AHM separately move for summary judgment, asserting that no genuine issue of material fact exists as to one or more elements of each of AITS's claims.

## II.  Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

4

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See* id. at 2553-54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998)(citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for

summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S. Ct. at 2552. If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted. Id.

### III.  Discussion

A.  PacifiCare's Motion for Summary Judgment

   1.  Breach of Contract

To prevail on a breach of contract claim in Texas, the plaintiff must show: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff sustained damages as a result of the breach. See Beverick v. Koch Power, Inc., 186 S.W.3d 145, 150 (Tex. App.--Houston [1st Dist.] 2005, pet. denied); accord Pegram v. Honeywell, Inc., 361 F.3d 272, 288 (5th Cir. 2004). The requirements of a valid contract are: (1) an offer;

(2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) consent to the terms by each party; and (5) execution and delivery of the contract with the intent that it be mutual and binding. Hubbard v. Shankle, 138 S.W.3d 474, 481 (Tex. App.--Ft. Worth 2004, pet. denied) (noting that "[t]he elements of written and oral contracts are the same and must be present for a contract to be binding."). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind." Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 589 (Tex. App.--Austin 2007, pet. filed); see also Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999, pet. denied). "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding these communications." Palestine Water Well Servs. v. Vance Sand & Rock, Inc., 188 S.W.3d 321, 325 (Tex. App.--Tyler 2006, no pet.).

AITS argues not that PacifiCare owes anything for services rendered to L.W. during PacifiCare's coverage period that ended on September 30, 2001, but rather, that PacifiCare somehow bound itself to pay for L.W.'s care even after PacifiCare's policy expired and AHM became L.W.'s insurer. AITS first argues that such a contract was created when AITS agreed to accept negotiated

discount rates from PacifiCare through PacifiCare's third-party claims administrator, Concentra Proferred Systems, Inc. ("Concentra"). AITS points to two communications between AITS and Concentra in which AITS agreed to accept adjusted prices of less than 100% for products or services provided to L.W. *See* Document No. 24 exs. D & E. Both forms are signed by Hudec on behalf of AITS.

AITS's contention that these forms created a contract in which PacifiCare agreed to pay AITS's claims at an adjusted rate even *after* L.W.'s health coverage with PacifiCare ended on September 30, 2001, has no support in the evidence. The forms refer only to products or services that were provided to L.W. *during her coverage period* under the PacifiCare Plan. Moreover, the forms specifically state that the adjusted prices apply only to seven listed products or services which were provided during L.W.'s coverage period. *See* id. (stating that AITS "agrees to accept the Adjusted Price listed below . . . as payment in full for the *following products/ services*," which are separately listed and fall within L.W.'s coverage period under the PacifiCare Plan). Furthermore, each form contains a disclaimer stating that the agreement is not a guarantee of benefit payment by PacifiCare, and that payment of benefits, if any, is subject to the terms of the insurance policy:

> Payment of benefits, if any, is subject to all terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed

>       as, a guarantee of benefit payment by [PacifiCare], and
>       will be null and void if no benefit payment is determined
>       to be payable by [PacifiCare].

Id. In short, the forms constitute no evidence of an agreement for PacifiCare to pay AITS's claims at an adjusted rate or otherwise after her coverage under the PacifiCare Plan terminated.

AITS also contends that when Hudec called PacifiCare to pre-verify L.W.'s coverage in March or April, 2001, a contract was formed "between the parties to provide home IV infusion therapy supplies and related services for a fee." See Document No. 24 at 6. Hudec testified in her deposition that, based on the pre-verification conversations and the negotiated rate conversation with Concentra, she expected that AITS would receive payment for its services to L.W. "[u]ntil [AITS] discharged the patient." See id. ex. A at 117. Although Hudec may have had the subjective expectation that PacifiCare would pay L.W.'s benefits indefinitely or until L.W. was discharged, AITS has presented no summary judgment evidence to show that PacifiCare ever agreed to do so or that there was a meeting of the minds, and thus an offer and acceptance, on this point. See, e.g., Tex. Disposal Sys., 219 S.W.3d at 589 ("The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind."); Ambulatory Infusion Therapy Specialists v. UniCare Life & Health Ins. Co., No. 06-1857, 2007 WL 1520994, at

9

\*2-3 (S.D. Tex. May 22, 2007) (Lake, J.) (granting summary judgment to defendant insurance company on AITS's breach of contract claim where AITS showed only a "subjective expectation" that AITS would be paid 75% of its entire claim based on a pre-verification telephone call, yet Hudec testified that she understood the verification to be contingent upon policy terms; thus, there was no meeting of the minds, "even from AITS's perspective").

PacifiCare also points to Hudec's own deposition testimony, in which she conceded that if PacifiCare could show that its coverage of L.W. ceased on October 1, 2001, then PacifiCare would not be liable for services provided to L.W. after that date:

> Q: Assume PacifiCare is able to demonstrate to your satisfaction that their medical plan ceased its coverage of LW on October 1, 2001. Are you with me?
>
> A: Uh-huh, yes.
>
> Q: Assuming they are able to do that, then in that event would you agree that PacifiCare would not be responsible for any services that were provided to LW after 10-1-2001, true?
>
> A: That [PacifiCare] would not be responsible for the payments after the date that insurance --
>
> Q: For any services rendered after 10-1-01, true?
>
> A: True.

Document No. 24 ex. A at 116. Here, the uncontroverted summary judgment evidence is that PacifiCare's coverage of L.W. terminated on September 30, 2001, and that there are no disputed claims for

services provided during PacifiCare's coverage period.  Moreover, AITS has presented no evidence of a written or oral contract whereby PacifiCare agreed to pay AITS's claims for services provided to L.W. after L.W. was no longer covered by the PacifiCare Plan.  PacifiCare is entitled to summary judgment on AITS's breach of contract claim.

 2.  Promissory Estoppel

In the alternative, AITS alleges that PacifiCare is estopped from denying payment at a discounted rate after expiration of its Policy period because of a promise "to pay for home IV infusion therapy supplies and related services to be provided to LW at a discounted rate," made to Hudec during the pre-verification telephone call and during the negotiation of a discount rate with Concentra.  *See* Document No. 24 at 8.  The elements of a promissory estoppel claim are (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment.  English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); *see also* Beverick, 186 S.W.3d at 152.  Texas courts also require a "definite finding that injustice can be avoided only by the enforcement of the promise."  Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc., 88 F.3d 347, 360 (5th Cir. 1996) (emphases omitted); *see also* Hunton v. Guardian Life Ins. Co. of Am., 243 F. Supp. 2d 686, 713 (S.D. Tex. 2002) (Atlas, J.), *aff'd*, 71 Fed.

Appx. 441 (5th Cir. 2003). A promisee must show "*reasonable* or *justified* reliance on the conduct or statement of the [promisor]." Clardy Mfg. Co., 88 F.3d at 360; Hunton, 243 F. Supp. 2d at 714.

As discussed above, there is no evidence to raise a genuine issue of fact that PacifiCare promised to pay AITS's claims for services provided to L.W. after her coverage under the PacifiCare Plan terminated on September 30, 2001, whether at a discounted rate or otherwise. Indeed, the very forms that discuss the discounted rates include a disclaimer stating that the agreement "does not constitute, nor should it be construed as, a guarantee of benefit payment by [PacifiCare], and will be null and void if no benefit payment is determined to be payable by [PacifiCare]" under the insurance policy. *See* Document No. 24 exs. D & E. PacifiCare is entitled to summary judgment on AITS's promissory estoppel claim.

3. Negligent Misrepresentation

AITS also asserts negligent misrepresentation. The elements of a negligent misrepresentation claim are: (1) the defendant made a representation in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the

12

representation. <u>Fed. Land Bank Ass'n v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991); <u>Dallas Firefighters Ass'n v. Booth Research Group</u>, 156 S.W.3d 188, 194 (Tex. App.--Dallas 2005, pet. denied). To be actionable, the "false information" provided by the defendant must "involve a misstatement of existing fact," not a promise of future conduct. *See* <u>Sergeant Oil & Gas Co., Inc. v. Nat'l Maint. & Repair, Inc.</u>, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994); *see also* <u>Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.</u>, 88 F.3d 347, 357 (5th Cir. 1996); <u>Miller v. Raytheon Aircraft Co.</u>, --- S.W.3d ---, 2007 WL 1166161, at *16 (Tex. App.--Houston [1st Dist.] Apr. 19, 2007, no pet.) ("[T]he plaintiff must also prove that the defendant misrepresented an existing fact rather than a promise of future conduct.").

AITS first argues that PacifiCare negligently misrepresented in pre-verification conversations and in the negotiated-rate agreement conversation that it would "pay for supplies and related services." *See* Document No. 24 at 6-7. AITS's Insurance Verification form documenting the pre-verification conversations, however, reflects nothing more than that Hudec verified that L.W. had insurance coverage with PacifiCare and discussed some general terms of the PacifiCare Plan. *See* Document No. 25 ex. C-12; *see also* <u>id.</u> ex. C at 114-15 (Hudec testifying that she has no independent recollection of the pre-verification conversations with PacifiCare, other than what is documented in the Insurance Verification form).

13

AITS has pointed to no false information that PacifiCare allegedly supplied to AITS during the pre-verification conversations. AITS also fails to identify any false information or misrepresentations contained in the negotiated-rate agreements with Concentra, as the forms merely reflect that AITS agreed to accept lower adjusted prices for products or services provided to L.W. during her coverage period under the PacifiCare Plan, and it is uncontroverted that PacifiCare paid these adjusted rates to AITS as agreed.

AITS also contends that PacifiCare failed to inform AITS that it had ceased to be L.W.'s insurer until *after* AITS provided services to L.W. and sent an invoice to PacifiCare.[2] AITS points to an affidavit submitted by PacifiCare in its motion for summary judgment from Lori Wolfe ("Wolfe"), a Transaction Department Manager at PacifiCare. Wolfe averred:

> In approximately October of 2001, in response to an invoice from AITS, PacifiCare informed AITS that it no longer insured LW as its PPO plan terminated on September 30, 2001. PacifiCare never represented that LW had coverage with PacifiCare after September 30, 2001. PacifiCare did not insure LW after September 30, 2001.

Document No. 23 ex. C ¶ 6. AITS appears to argue that PacifiCare had an affirmative duty to inform AITS of the change in insurance

---

[2] It is uncontroverted that PacifiCare informed AITS that it no longer insured L.W. in October, 2001--less than a month after L.W.'s coverage had ended--when PacifiCare received an invoice from AITS. AITS continued to provide services and supplies to L.W. for eight months after receiving this notice.

14

carriers before AITS provided services to L.W., and PacifiCare's failure to do so amounted to a negligent misrepresentation. However, "[u]nder the doctrine of negligent misrepresentation, the defendant must *supply false information* for the guidance of others in their business." Sergeant Oil, 861 F. Supp. at 1360 (emphasis added); *see also* Clardy Mfg. Co., 88 F.3d at 357 (stating that a defendant must provide false information that is a misstatement of existing fact); RESTATEMENT (SECOND) OF TORTS § 552(1) (1977). Here, AITS does not contend, and the record does not reflect, that PacifiCare made any affirmative representations that L.W. had insurance coverage with PacifiCare after September 30, 2001 when L.W.'s coverage terminated, nor does the record reflect that PacifiCare conveyed any other information that was false or any misstatement of existing fact. "Without a disclosure or representation, there could be no 'supplying' of false information to support a negligent misrepresentation claim." Sergeant Oil, 861 F. Supp. at 1360 (granting summary judgment on negligent misrepresentation claim where seller made no "affirmative representations concerning the presence or absence of trash in the fuel blend.") (cited with approval for related proposition in Clardy Mfg. Co., 88 F.3d at 357); *cf.* Nast v. State Farm Fire & Cas. Co., 82 S.W.3d 114, 124 (Tex. App.--San Antonio 2002, no pet.) ("Only by making an affirmative misrepresentation would the insurance agent create potential liability" for purposes of

15

negligent misrepresentation claim). In sum, there is no summary judgment evidence to raise a genuine issue of material fact that PacifiCare supplied AITS with false information or made a misrepresentation upon which AITS justifiably relied. PacifiCare is therefore entitled to summary judgment on AITS's negligent misrepresentation claim.

B.   AHM's Motion for Summary Judgment

   1.   Breach of Contract

AHM moves for summary judgment on AITS's breach of contract claim, arguing that there is no evidence of a valid contract between AITS and AHM. Hudec testified in her deposition that she called AHM on October 22, 2001 to verify that L.W. was a member of the Aetna Plan, and AHM in that conversation verified that L.W. was covered for out-of-network benefits under the Aetna Plan as of October 1, 2001. *See* Document No. 25 at 56-57, 60, 89-90. Hudec conceded, however, that no rates of reimbursement were discussed, and Hudec "did not discuss with [AHM] what [AHM] would pay for those services" provided to L.W. Id. at 64. Thus, by AITS's own concession, the conversation at most simply verified that L.W. had out-of-network coverage with AHM as of October 1, 2001, without any discussion about the rate of reimbursement or what percentage of compensable claims would be paid to AITS by AHM. There is no evidence of any subsequent oral communication with AHM regarding

16

L.W.'s coverage under the Aetna Plan, and AITS has presented no evidence of a written contract with AHM to pay any certain reimbursement rate or percentage of claims under its insurance contract.  Furthermore, as discussed above, there is no evidence that PacifiCare made any commitment to pay benefits of any type for services rendered after its coverage period ended September 30, 2001, or that it purported to bind any successor insurer to pay benefits on the same basis that PacifiCare agreed to pay while L.W. was covered under the PacifiCare Plan.  In short, there is no evidence of any contract between AITS and AHM.  AITS offers no evidence of a meeting of the minds between it and AHM.  Hudec's "expectation" of payments in certain amounts is not predicated on any evidence of a contract or agreement by AHM to pay the "expected" amounts.  *See, e.g.,* Tex. Disposal Sys., 219 S.W.3d at 589 ("The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind."); Lawfinders Assocs. Inc. v. Legal Research Ctr., 46 Fed. Appx. 227, 2002 WL 1940112, at *1 (5th Cir. July 26, 2002) ("Objective standards are used to determine whether there was a meeting of the minds.") (citing Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999, pet. denied)).  AHM is entitled to summary judgment on AITS's breach of contract claim.

2.  <u>Promissory Estoppel</u>

In the alternative, AITS argues that AHM is estopped from denying full payment of all billed claims because of a promise "to pay for home IV infusion therapy supplies and services" made by AHM during the verification phone call and because AHM allegedly overpaid four of AITS's claims in varying amounts.  For the same reasons stated above, there is no evidence to raise a fact issue that AHM promised to pay any certain rate of reimbursement or a percentage of compensable claims for services provided to L.W. during her coverage period.  Similarly, AHM's overpayment of four claims, resulting in aggregate payments to AITS of 36% of AITS's total charges rather than only 30% as called for by the Aetna Plan, does not raise a fact issue on Plaintiff's promissory estoppel allegation that AHM is liable for 100% of the uncollected $177,475 billed by AITS.  Moreover, AITS has adduced no evidence of reasonable or justified reliance by AITS on any purported promise made by AHM.  *See, e.g.,* <u>Clardy Mfg. Co.</u>, 88 F.3d at 360-61 ("[E]stoppel requires a *reasonable* or *justified* reliance on the conduct or statement of the [promisor]")(emphasis in original); <u>Hunton</u>, 243 F. Supp. 2d at 714 (noting that the Fifth Circuit "examines the context of the promise to determine the reasonableness of reliance" on a promissory estoppel claim).  AHM is entitled to summary judgment on AITS's promissory estoppel claim.

18

3.   Negligent Misrepresentation

AITS asserts a negligent misrepresentation claim against AHM, arguing that the alleged misrepresentations stem from: (1) an October 22, 2001 verification phone call between AITS and AHM, when Hudec contacted AHM to verify L.W.'s coverage; (2) Defendants' failure to notify AITS of the change in L.W.'s insurance carriers until *after* AITS had provided supplies and services to L.W. in October, 2001; and (3) AHM's overpayment of AITS's first claim for services provided to L.W. in October, 2001.  AHM argues that the negligent misrepresentation claim is barred by limitations and, as well, that it fails on the merits because there is no evidence of an actionable misrepresentation by AHM.

The limitations period for a negligent misrepresentation claim under Texas law is two years.  *See* Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp., 20 F.3d 1362, 1371-72 (5th Cir. 1994); *see also* Tex. Soil Recycling, Inc. v. Intercargo Ins. Co., 273 F.3d 644, 649 (5th Cir. 2001); HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998).  AITS alleges that the misrepresentations occurred in October, 2001 when AHM failed immediately to notify AITS of the change in insurance carriers, and when AITS contacted AHM to verify L.W.'s coverage on October 22, 2001.  AITS also bases its claim on AHM's alleged overpayment of AITS's first claim for services provided to L.W. in October, 2001.  It is undisputed that AHM sent all written explanations of benefits ("EOBs") to AITS by

July 25, 2002, and that AITS had notice that it would not receive full payment of every bill by on or about July 25, 2002, when AHM sent the last of its written EOBs denying payments for part of the amounts billed.  At the latest, therefore, limitations began to run from July 25, 2002, or two or three days thereafter, well more than two years before this lawsuit was filed on October 14, 2005.  AITS does not dispute that its negligent misrepresentation claim is barred by limitations, and AHM is entitled to summary judgment on this barred claim.

## IV.  Order

For the foregoing reasons, it is

ORDERED that Defendant PacifiCare Life Assurance Company's Motion for Summary Judgment (Document No. 23) and Defendant Aetna Health Management, LLC's Motion for Summary Judgment (Document No. 25) are both GRANTED, and Plaintiff Ambulatory Infusion Therapy Specialists, Inc.'s claims against both Defendants are DISMISSED on the merits.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this  1st  day of August, 2007.

*Ewing Werlein, Jr.*
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE